ELIPHALET R. KNIGHT, Appellant, *v.* DANL. PARKER, Appellee.

### APPEAL FROM KANKAKEE.

An agreement which declares that A. has sold to B. his stock of goods in a certain town for a specific sum, will not include all the personal effects of the vendor in such town; but proof may be offered to show of what the stock sold consisted.

THIS was an action brought by the plaintiff below, appellee here, to recover the consideration of a farm sold by him to appellant. The venue was changed to Kankakee county. The plaintiff below recovered a judgment.

The facts of the case will sufficiently appear from the opinion of the court.

C. H. WOOD, for Appellant.

FLETCHER & RAY, for Appellee.

WALKER, J. This controversy grows out of the sale of a stock of goods. Appellant claims that the stock he sold to appellee did not embrace the stoves in controversy. The written agreement contains this language, " The party of the first part has this day sold to the party of the second part, his stock of goods in the town of Onarga, for the sum of thirty-one hundred and fifty dollars." The goods in the store-house were afterwards delivered to appellee, and upon being invoiced proved to be worth over four thousand dollars. There were, as it appears from the evidence, some eight or ten stoves in the railroad depot, which appellant claimed were not embraced in the stock transferred by the sale. It appears by the evidence, that these stoves had been a portion of a stock of goods previously owned by a firm composed of appellant and Thomas, which was afterwards changed to Knight & Richardson. It appears that the stoves were not a portion of the stock of that firm, and when it was changed to E. R. and C. S. Knight, they did not become a part of their stock. That they, during the continuance of the last named firm, were the property of appellant, and when one was sold, he received credit for the price on the

38

firm books. That when appellee purchased this stock of goods, nothing was said about the stoves, nor until some weeks afterwards. They were not invoiced.

By the terms of the bill of sale, nothing passed but the goods embraced in the stock of merchandise. A merchant may, undeniably, own goods and chattels, even of the description embraced in his stock for sale, and yet they form no portion of it. That this sale did not include household furniture, horses, carriage and such articles, is too clear to require argument, even if such articles had been kept for sale. Yet they would be the property of the merchant, but not a part of his stock of merchandise, simply because he and others would not so consider them, Nor would the fact be changed, even if when such articles were sold, the price received went into and formed a portion of one common fund.

In this case, it appears that when any one of these stoves was sold, the proceeds were kept separate, or at least the firm became the purchaser of appellant, and then sold them to a customer. They were not understood by the principals and their employees to form any portion of the stock sold to appellee. They were not shown to him, nor was he informed that they were a part of it, and were not invoiced to appellee. Two witnesses testify that they were not a part of the stock, and we are at a loss to see upon what grounds this claim is based.

The first of appellant's instructions should have been given. It asserted that the language of the agreement embraced the goods owned and kept by appellant, at his place of business in the town, and with which he and his agents were accustomed to traffic, and *that he might, consistently with the agreement,* own other personal property in the town, which should not be included in the agreement, and the title of which would not thereby pass to appellee. This instruction leaves it to the jury to determine, whether under the evidence it appears, that this property was intended to and did form a part of the stock, at the time of the sale, and if not, to find for appellant. The agreement identified no portion of the property sold, and what it embraced could only be shown by extrinsic evidence. It passed the title to the entire stock of goods, but left it to evidence to show of what that stock consisted, and the instruction properly asserted that it consisted of the goods with which appellant and his agents were accustomed to traffic, and not other property not designed for that purpose. Whilst evidence cannot be heard to contradict the fact that the entire stock was sold, still evidence can be heard to identify and show of what it consisted. Under that evidence it is for the jury to determine whether the property in controversy was or not a part of the

stock. For refusing to give this instruction, the judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*